UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 10-CR-0061(3) (PJS/AJB) |
| | Case No. 15-CV-3101 (PJS) |
| Plaintiff, | |
| v. | ORDER |
| JEFFREY COLE BENNETT, | |
| Defendant. | |

Timothy Rank and Julie Allyn, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Jeffrey Bennett, pro se.

Defendant Jeffrey Bennett was convicted by a jury of mail fraud, conspiracy to commit mail fraud, conspiracy to commit money laundering, and income-tax evasion and was sentenced to 95 months in prison and three years of supervised release. The United States Court of Appeals for the Eighth Circuit affirmed Bennett's conviction and sentence on direct appeal. *United States v. Bennett*, 765 F.3d 887 (8th Cir. 2014). The Supreme Court denied Bennett's petition for certiorari on February 23, 2015. ECF No. 505.

This matter is before the Court on Bennett's timely motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons that follow, the motion is denied. Because the record conclusively demonstrates that Bennett is not

entitled to relief, no hearing is necessary.  28 U.S.C. § 2255(b); *Noe v. United States*, 601 F.3d 784, 792 (8th Cir. 2010).

## I.  BACKGROUND

Bennett and his codefendant, Clayton Craig Hogeland, were employed by Advantage Transportation ("Advantage"), a trucking-logistics company.  From 2003 through 2005, Bennett and Hogeland worked together to defraud Advantage of hundreds of thousands of dollars.  Bennett created four companies:  American Logistics Advisors, Inc.; Transportation Marketing Concepts, Inc.; LTLDevelopment.com; and Air Catering Solutions and Marketing, Inc. ("ACS").  Those companies sent bills to Advantage for goods and services that the companies had never provided.  Hogeland arranged for the fraudulent invoices to be paid by Advantage.  Bennett kept a portion of the payments for himself, and he kicked back a portion of the payments to Hogeland in the form of checks written to Hogeland's wife, defendant Jennifer Hogeland.  All three defendants went to trial, and each defendant was convicted of all counts against him or her.  Bennett now brings a timely motion under 28 U.S.C. § 2255.

## II.  ANALYSIS

Bennett raises numerous claims of ineffective assistance of counsel.[1]  To prevail on a claim of ineffective assistance of counsel, Bennett must show that (1) his counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984).  In reviewing ineffective-assistance claims, a court must be careful to avoid second-guessing counsel's strategic decisions.  "Judicial scrutiny of counsel's performance must be highly deferential. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ."  *Id.* at 689.  The reasonableness of counsel's conduct should be considered in light of the defendant's own statements and actions.  *Id.* at 691.  Applying these standards, the Court considers each of Bennett's claims.

---

[1]The government argues that Bennett's claims are procedurally defaulted because, although Bennett (barely) frames them as ineffective-assistance claims, in reality Bennett simply wants to raise trial and sentencing errors that he should have raised on direct appeal.  The Court has sympathy for the government's argument.  But Bennett is hardly the first defendant to take a second bite at the apple by recasting claims of trial or sentencing error as ineffective-assistance claims.  Bennett has the right to argue in a § 2255 proceeding that his attorneys were ineffective because they failed to notice, prevent, object to, or mitigate a trial or sentencing error.  The Court therefore addresses Bennett's claims on the merits.

*A. Ground One*

Ground One of Bennett's § 2255 motion is based on his contention that his company, ACS, provided goods to Advantage and therefore was not a sham. Evidence that ACS provided goods to Advantage was introduced at trial. Bennett argues that, based on this evidence, his counsel should have moved to dismiss the mail-fraud and money-laundering counts or at least argued to the jury that ACS was not a sham. Relatedly, Bennett contends that the March 16, 2005 check on which his mail-fraud convictions depend was in exchange for goods—namely, 1,000 calendar magnets. He also argues that, because there was evidence that ACS provided goods to Advantage, the government could not prove the allegation in the indictment that *all* of the invoices that ACS submitted to Advantage were fraudulent.

The first problem with Bennett's argument is that his counsel did, in fact, argue to the jury and then on appeal that Bennett's companies were legitimate businesses that provided goods to Advantage. Trial Tr. Vol. XII at 2233-34 [ECF No. 438 at 85-86]; Appellant's Br. at 28-30, *United States v. Bennett*, 765 F.3d 887 (8th Cir. 2014) (No. 12-3754). The Eighth Circuit (implicitly) rejected this argument, holding that there was sufficient evidence to support Bennett's mail-fraud convictions. *Bennett*, 765 F.3d at 896. Because Bennett's counsel made this argument to the jury and on appeal—and because

-4-

both the jury and the Eighth Circuit rejected this argument—Bennett cannot show either that his counsel were ineffective or that he was prejudiced.

With respect to the March 16, 2005 check, Bennett's argument fails because the government presented evidence that, although ACS may have provided some goods to Advantage, it did not provide any goods in exchange for that particular check. Specifically, the government offered evidence that Advantage paid for the calendar magnets with a different check (dated March 1, 2005).  *See* Gov't Trial Ex. 11 at 28 ($1,029.51 invoice to Advantage from ACS for 1,000 calendar magnets); Gov't Trial Ex. 15 at 21 (March 1, 2005 check from Advantage to ACS for $1,029.51).  This evidence gave the jury a sufficient basis on which to reject Bennett's contention that the March 16 check was in payment for the calendar magnets.  As a result, nothing Bennett's counsel could have done would have induced the jury to acquit him or this Court to dismiss the charges against him.  The fact that Bennett can point to other evidence from which the jury could have reached a different conclusion does not mean that his counsel were ineffective; it simply means that the jury disagreed with Bennett's interpretation of the evidence, as the jury was entitled to do.

Bennett also argues that his counsel should have moved to dismiss the indictment because, contrary to the evidence at trial, the indictment alleged that *every* invoice that ACS submitted to Advantage was for nonexistent goods and services.  This

argument fails, however, because the government may prove a narrower case than that alleged in the indictment. *See United States v. Miller*, 471 U.S. 130, 144-45 (1985). In addition, allegations in the indictment that are not necessary to establish an offense may be disregarded as surplusage if the remaining allegations are sufficient to state an offense. *United States v. McIntosh*, 23 F.3d 1454, 1457 (8th Cir. 1994). Because the remaining allegations in the indictment were sufficient to state an offense, Bennett's counsel were not ineffective in failing to seek dismissal.

*B. Ground Two*

Ground Two of Bennett's § 2255 motion is focused on his contention that the government failed to prove that he committed the crime of money laundering. Specifically, Bennett argues that the government failed to prove that he concealed the March 16, 2005 check, and Bennett alleges that his counsel were ineffective for failing to move for dismissal or otherwise bring this defect to the jury's attention.

The problem with Bennett's argument is that he was not convicted of money laundering, but rather of *conspiring* to launder money. There was sufficient evidence from which the jury could find all three elements of a money-laundering conspiracy. *See United States v. Jarrett*, 684 F.3d 800, 802 (8th Cir. 2012) (elements of money-laundering conspiracy). There was no need to prove that Bennett *actually* laundered money, nor did the government have to prove an overt act in furtherance of the

conspiracy.  *Id.* at 802; *Whitfield v. United States*, 543 U.S. 209, 214 (2005).  Bennett's counsel were not ineffective in failing to move for dismissal.

*C. Ground Three*

In Ground Three of his § 2255 motion, Bennett contends that his counsel were ineffective in failing to defeat a two-level sentencing enhancement for obstruction of justice.

In July 2008, after learning that the IRS was conducting a criminal-tax investigation, Bennett engaged H&R Block to prepare several tax returns, including a 2004 tax return for American Logistics Advisors (one of his sham companies).  *See* Gov't Trial Ex. 224.  On the return, American Logistics Advisors took a deduction for contract labor in the amount of $41,765.  Gov't Trial Ex. 224.  At Bennett's direction, H&R Block also prepared a Form 1099 showing that the $41,765 had been paid to a man named John T. Currey.  Trial Tr. Vol. IX at 1639-40 [ECF No. 419 at 180-81].

Currey was a friend of Bennett's who had once worked with him at Advantage.  Conveniently for Bennett, Currey had died in 2006, and therefore could not speak to Bennett's claim that he had been paid $41,765 in 2004 by American Logistics Advisors.  But Currey's widow, Stacey Currey, testified at trial that she was certain that her husband had not been paid $41,765 by American Logistics Advisors in 2004.  On the

basis of this evidence, the Court imposed a two-level obstruction-of-justice enhancement under the United States Sentencing Guidelines.

Bennett contends that his counsel were ineffective because they failed to argue that the government did not prove that he obstructed justice either factually or legally. Bennett's claim is meritless, however, because his counsel objected to the obstruction enhancement, *see* ECF No. 283 at 3, which triggered the Court's own independent analysis of the factual and legal basis for it, *see* ECF No. 329 at 14-16. Ultimately, the Court credited the testimony of Stacey Currey, as the Court was entitled to do.

Bennett also contends that his counsel were ineffective because they did not further investigate and uncover facts that would have impeached Stacey Currey's testimony. Bennett argues that his counsel could have deposed Currey and subpoenaed various financial records to prove that, in fact, Bennett had paid John Currey $41,765 in 2004 and that Stacey Currey was not well informed about her late husband's finances. But Bennett merely speculates that such evidence exists and that, if such evidence exists, it might have changed the Court's mind. As a result, Bennett cannot show that he was prejudiced by his counsel's alleged failures. *See United States v. Vazquez-Garcia*, 211 F. App'x 544, 546 (8th Cir. 2007) (to support a claim of failure to investigate under § 2255, a defendant must provide independent evidence of what further investigation would have uncovered); *Sanders v. Trickey*, 875 F.2d 205, 210 (8th Cir. 1989) (habeas claim failed

because petitioner offered no affidavit or testimony from witness as to how witness would have testified).

Bennett further argues that his counsel should have asked additional questions on cross-examination in order to highlight the implausibility of Stacey Currey's testimony. Specifically, Bennett contends that his counsel should have pointed out the absurdity of her claim that her husband worked only for Bennett, yet received no pay from him. This argument simply misrepresents Stacey Currey's testimony. She did not testify that her husband worked only for Bennett. Instead, she testified that her husband never did any work for Bennett "outside of Advantage Transportation." Trial Tr. Vol. IX at 1657-58 [ECF No. 419 at 198-99]. In other words, she testified that her husband worked for *Advantage*, not *Bennett*—which is completely consistent with her testimony that her husband did not receive any pay from Bennett personally or American Logistics Advisors.

Finally, Bennett makes lengthy arguments to the effect that the Court erred in applying the obstruction enhancement. Ordinary claims of error under the Sentencing Guidelines are not cognizable under § 2255, however. *See Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc). Setting that aside, Bennett could have, but did not, raise these issues on direct appeal. As a result, they are procedurally defaulted. *See Jennings v. United States*, 696 F.3d 759, 762 (8th Cir. 2012) ("a petitioner may not raise an

issue before the district court for the first time in a § 2255 motion if the issue was not presented on direct appeal from the conviction"). Bennett is therefore not entitled to any relief on Ground Three of his § 2255 motion.

### D. Ground Four

Finally, Bennett claims that the jury instructions contained four errors and that his counsel were ineffective in failing to identify or object to these errors.

Bennett first complains that the jury instructions listed overt acts that were not alleged in the indictment. A defendant may be found guilty of overt acts not pleaded in the indictment, however. *United States v. Mohamed*, 600 F.3d 1000, 1006 (8th Cir. 2010), *abrogated on other grounds by Rodriguez v. United States*, 135 S. Ct. 1609 (2015).

Bennett next argues that the definition of "financial transaction" in Instruction 31 erroneously expanded the grounds on which Bennett could be found guilty of conspiracy to commit money laundering. Instruction 31 defines "financial transaction" to include the movement of funds by wire, by means other than wire, or by a monetary instrument (such as cash or a check). *See* ECF No. 262 at 22. Bennett's argument is difficult to understand, but he apparently contends that the indictment's description of the financial transactions at issue as "transfers of the proceeds of specified unlawful activity to [defendants] or for their benefit," *see* ECF No. 1 at 8, is somehow narrower than the definition of "financial transaction" in the instructions.

Bennett is incorrect. A "transfer" is the same thing as a "movement of funds." The instructions simply explain that funds may be moved by wire, by means other than wire, or by a monetary instrument. The indictment does not specify the exact means (wire, monetary instrument, or otherwise) by which the transfers were implemented. Thus, the indictment is not narrower than the instructions.

Even if the indictment were narrower than the instructions, Bennett's argument would still fail. Again, Bennett was not convicted of money laundering, but of conspiring to launder money. Because Bennett could be convicted of conspiring to launder money without any proof that he actually laundered money, any difference between the indictment and the instructions describing money laundering is irrelevant to the conspiracy charge. *Jarrett*, 684 F.3d at 802-03 (alleged broadening of money laundering in instructions was irrelevant to money-laundering conspiracy charge).

Bennett next contends that the crime of money laundering has four elements, but that the Court omitted the fourth element. This argument, too, betrays Bennett's confusion concerning his offense of conviction. Again, Bennett was not convicted of money laundering; he was convicted of conspiracy to launder money, which is a different crime. *See* ECF No. 1 at 7-8 (charging Bennett with money-laundering conspiracy in violation of 18 U.S.C. § 1956(h)). The crime of conspiracy to launder money has three elements, all of which the Court correctly described to the jury. *See*

ECF No. 262 at 21; *Jarrett*, 684 F.3d at 802 (identifying the elements of money-laundering conspiracy).

Finally, Bennett contends that Instruction 17, relating to mail fraud, included overt acts outside the statute of limitations. As a result, says Bennett, there is a possibility that the jury convicted him of a time-barred offense. What Bennett fails to mention is that Instruction 17 also instructed the jury that in order to convict under Count 1—which was the only substantive mail-fraud count under which Bennett was charged—it had to find that check number 202882 for $2,069.21 was received by Jeffrey Bennett on or about March 17, 2005. ECF No. 262 at 11. As the Eighth Circuit later held, Bennett's receipt of that check on March 17, 2005 was within the statute of limitations. *Bennett*, 765 F.3d at 893-95. There was no error in the jury instructions.

### E. Conclusion

To the extent that Bennett has raised any additional arguments, those arguments are all variations on the arguments rejected above and do not merit further discussion. Bennett's § 2255 motion is denied.

### ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant's motion to request additional time [ECF No. 515] is GRANTED.

2. Defendant's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [ECF No. 508] is DENIED.

3. No certificate of appealability will issue.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  March 11, 2016      s/Patrick J. Schiltz
                            Patrick J. Schiltz
                            United States District Judge